UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ELIZABETH F. STABLER,                                    Case No.   16-cv-9601

                                    Plaintiff,

                                                         **COMPLAINT**

            -against-

CONGREGATION EMANU-EL OF THE CITY
OF NEW YORK, JOSHUA DAVIDSON, individually
and in his official capacity, GADY LEVY, individually
and in his official capacity, CARA GLICKMAN,
individually and in her official capacity, JOHN          **Trial by Jury Demanded**
HARRISON STREICKER, individually and in his
official capacity, LAWRENCE HOFFMAN,
individually and in his official capacity, JOHN
AND JANE DOES 1-10, individually and in their
official capacities and XYZ CORP. 1-10,

                                    Defendants.

------------------------------------------------------------------X

          Plaintiff, Elizabeth F. Stabler ("Plaintiff" or "Stabler"), by her attorneys The Law Office

of Rudy A. Dermesropian, LLC, complaining of defendants the Congregation Emanu-El of the

City of New York ("Congregation"), Joshua Davidson ("Davidson"), individually and in his

official capacity, Gady Levy ("Levy"), individually and in his official capacity, John Harrison

Streicker ("Streicker"), individually and in his official capacity, Cara Glickman ("Glickman"),

individually and in her official capacity, Lawrence Hoffman ("Hoffman"), individually and in his

official capacity, John and Jane Does 1-10, individually and in their official capacities, and XYZ

Corp. 1-10 (collectively referred to as "Defendants"), alleges as follows:

          1.       This lawsuit seeks to remedy Defendants' intentional creation of a hostile work

environment, unlawful discrimination, harassment, retaliation and unlawful adverse actions

towards the Plaintiff based on her gender in violation of Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. §§2000e *et seq*. ("Title VII"), her age in violation of the Age Discrimination

in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, *et seq*., her disability and failure to

accommodate in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §

12101, *et seq*., all of which are also in violation of the Executive Law of the State of New York,

New York State Human Rights Law ("Executive Law"), § 296, *et seq.*, and the Administrative

Code of the City of New York, New York City Human Rights Law ("Administrative Code"), § 8-

101, *et seq*.

## **PARTIES**

2.      At all relevant times herein, Plaintiff was a Librarian at the Congregation and a

resident of New York County.

3.      At all relevant times herein, Plaintiff was over the age of forty (40).

4.      Plaintiff is an "employee" within the meaning of the ADA, the ADEA and the

Executive Law, and a "person" within the meaning of Title VII and the Administrative Code.

5.      Defendant Congregation is located at One East 65th Street, New York, New York.

6.      Defendant Congregation is an "employer" within the meaning of Title VII and the

ADA because it had more than 15 employees, within the meaning of the ADEA because it had

more than 20 employees, within the meaning of the Executive Law and the Administrative Code

because it had more than 4 persons in its employ.

7.      At all relevant times herein, Defendant Davidson was the Senior Rabbi at the

Congregation.

8.      Upon information and belief, Defendant Davidson is still the Senior Rabbi at the

Congregation.

9.     Defendant Davidson is an "employee" within the meaning of the ADA, the ADEA and the Executive Law, and a "person" within the meaning of Title VII and the Administrative Code, and a person of authority that exercised control over Plaintiff's employment.

10.     At all relevant times herein, Defendant Levy was the Director of the Skirball Center for Adult Jewish Learning at the Congregation.

11.     Upon information and belief, Defendant Levy is still the Director of the Skirball Center for Adult Jewish Learning at the Congregation.

12.     Defendant Levy is an "employee" within the meaning of the ADA, the ADEA and the Executive Law, and a "person" within the meaning of Title VII and the Administrative Code, and a person of authority that exercised control over Plaintiff's employment.

13.     At all relevant times herein, Defendant Glickman was the Vice President of Finance and Administration at the Congregation.

14.     Upon information and belief, Defendant Glickman is still the Vice President of Finance and Administration at the Congregation.

15.     Defendant Glickman is an "employee" within the meaning of the ADA, the ADEA and the Executive Law, and a "person" within the meaning of Title VII and the Administrative Code, and a person of authority that exercised control over Plaintiff's employment.

16.     At all relevant times herein, Defendant Streicker was the President of the Board of Trustees of the Congregation.

17.     Upon information and belief, Defendant Streicker is still the President of the Congregation.

18.     Defendant Streicker is an "employee" within the meaning of the ADA, the ADEA and the Executive Law, and a "person" within the meaning of Title VII and the Administrative Code, and a person of authority that exercised control over Plaintiff's employment.

19.     At all relevant times herein, Defendant Hoffman was a consultant to the Congregation.

20.     Upon information and belief, Defendant Hoffman is still a consultant to the Congregation.

21.     Defendant Hoffman is an "employee" within the meaning of the ADA, the ADEA and the Executive Law, and a "person" within the meaning of Title VII and the Administrative Code, and a person of authority that exercised control over Plaintiff's employment.

22.     Defendants John and Jane Does 1–10 are natural persons whose true identities are not yet known to Plaintiff and are partners, shareholders, principals, employees, agents or persons otherwise associated with one or more of the other Defendants, or were otherwise in positions which enabled them to commit, or to aid and abet in the commission of, the wrongful acts against Plaintiff set forth herein.

23.     Defendants XYZ Corp. 1–10 are additional entities whose true identities are not yet known to Plaintiff, which are owned or operated by, affiliated with, owned and/or managed by or for the benefit of one or more other Defendants, or any combination of any or all of them.

24.     In committing the wrongful conduct described in this action and obtaining the benefits therefrom to Plaintiff's loss, cost, damage and detriment, one or more of the Defendants acted and operated interchangeably as principals, agents, instrumentalities and/or *alter egos* of one or more of them and/or each other.

25.     Each John and Jane Doe defendant is an "employee" within the meaning of the ADA, the ADEA and the Executive Law, and a "person" within the meaning of Title VII and the Administrative Code, and a person of authority that exercised control over Plaintiff's employment.

26.     Each XYZ Corp. defendant is an "employer" within the meaning of Title VII and the ADA because it had more than 15 employees, within the meaning of the ADEA because it had more than 20 employees, within the meaning of the Executive Law and the Administrative Code because it had more than 4 persons in its employ.

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction with respect to Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 & 1343, 42 U.S.C. §§2000e *et seq.*, 29 U.S.C. § 621, *et seq.*, and 42 U.S.C. § 12101, *et seq.*

28.     The unlawful employment practices were committed in New York County, Southern District of New York.

29.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States.

30.     This Court has supplemental jurisdiction over Plaintiff's New York State and New York City claims pursuant to 28 U.S.C. § 1367(a).  The New York State and New York City claims are inexorably related to, arise out of the same operative facts and circumstances as, and are a necessary, integral part of the federal law claims, such that the federal claims and New York State and New York City law claims form part of the same case or controversy.

31.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) & (2).

32.     All conditions precedent to filing suit have been satisfied. On February 29, 2016, Plaintiff filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity

Commission, New York District Office ("EEOC") [Charge No. 520-2016-01947]. On or about September 14, 2016, the EEOC issued Plaintiff a Right to Sue Notice. This action was filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue. Annexed hereto as <u>Exhibit A</u>, and incorporated in this Complaint by reference, is a copy of Plaintiff's Right to Sue Notice.

## FACTS

33.     At all relevant times herein, Plaintiff was in her late 60's and was employed as a Librarian at the Congregation from September 29, 1999 until her unlawful termination on May 12, 2015, with an effective date of termination on May 31, 2015.

34.     Plaintiff's duties and responsibilities included but were not limited to, assembling an automated 14,000-item library from books stored for many years into a new library; expanding the library collection, including periodicals, books, children's materials, realia, audio-visual material and education enhancement tools; facilitating and organizing reading groups and a congregation-wide read-along with relevant lectures; developed and ran the Meet the Author and Library and Museum Lecture Series; conceived the "Who Are We" program series; worked with the Board of Trustees Cultural and Programming Committee; researched and implemented an upgrade to the library's automated system to allow offsite access to the library database; supported and developed resource material for adult education and other groups; maintained subscriptions to numerous periodicals; regularly attended and taught workshops, seminars and national library conventions; researched and facilitated continuing education class about iPad applications for teaching Hebrew; authored several articles for "How to Run a Jewish Library" published by the Association of Jewish Libraries; wrote articles for New York Metropolitan Area chapter of the Association of Jewish Libraries' NYMA News; Chaired the Association of Jewish Libraries 2004 National Convention held in Brooklyn, New York; appointed to represent the Association of

Jewish Libraries as a member of an advisory committee for the American Theological Library Association's planning grant.

35.     In addition, Plaintiff created a functioning Judaica library in the newly renovated Stettenheim Library whose shelves were empty, culled and selected appropriate material from 25,000 items in storage for four years, and purchased all additional volumes and items necessary for a congregational library.

36.     The foregoing goes to show the value, skills and valuable contribution of Plaintiff to the Congregation, scholars and the community.

37.     Plaintiff was a highly praised and valuable employee of the Congregation with excellent work ethics and no issues of work related performance.

38.     No negative performance at all from start of work until mid-2014 when Levy and Glickman started working at the Congregation.

39.     Plaintiff, who suffers from severe Osteoarthritis, had a knee replacement surgery in or about October 2008.

40.     It was well known to Defendants that Plaintiff had a knee replacement surgery in October 2008 and that she suffers from severe Osteoarthritis, especially since she started wearing an ankle brace in 2014 because of her disability and using a cane to walk.

41.     It was also known that Plaintiff needed another knee replacement surgery, which she anticipated having in the summer of 2015.

42.     Until mid-2014, Plaintiff was allowed to work from home in times of inclement weather since she had a physical disability that made it difficult to commute to work when the weather conditions were not favorable.

43.     While working from home, Plaintiff was able to read materials in preparation for the two book groups she facilitated, read review journals and professional literature, send and receive emails, work on the Congregation's community cookbook, and place orders for library acquisitions, all of which were part of her duties and responsibilities.

44.     In or about 2012, Defendant Streicker became the Congregation's President of the Board and hired Rabbi Davidson in or about 2013 who took over as Senior Rabbi at the Congregation.

45.     Defendant Davidson hired Levy, who began to work as Director of the Skirball Center for Adult Jewish Learning in June 2014, and Glickman, who began to work as Executive Vice President in mid-July 2014.

46.     Prior to the hiring of Levy and Glickman, Plaintiff was entitled to work from home in times of inclement weather.

47.     However, after Defendants Levy and Glickman were hired by the Congregation, Plaintiff's requests for reasonable accommodations to work from home during inclement weather conditions were denied by Defendants.

48.     Defendants' sudden decision to deny Plaintiff's requests for accommodation to work from home in or about mid-2014 was fueled with discriminatory intent against Plaintiff because of her disability, age and gender.

49.     No other employee who was a male, under the age of forty and/or not suffering from a disability was suddenly denied reasonable accommodations due to a disability after being granted such an accommodation in the past.

50.     As part of her employment and involvement with the Congregation Plaintiff also served on the Board's Programming and Culture Committee from 2012 until Defendant Levy removed her without prior notice.

51.     Dr. Mark Wiesstuch, the Executive Vice President at the Congregation, assigned Plaintiff on the Board's Programming and Culture Committee because of her skills and ability to create special programing.

52.     However, in or about August 2014, after Defendants Levy and Glickman were hired by the Congregation, Plaintiff was suddenly removed from the Board's Programming and Culture Committee.

53.     Defendants also published the list of the Programming and Culture Committee without Plaintiff's name, despite Plaintiff's contribution to the committee and denying her that recognition.

54.     Defendants' sudden decision to remove Plaintiff from the Board's Programming and Culture Committee was fueled with discriminatory intent against Plaintiff because of her disability, age and gender.

55.     No other employee who was a male, under the age of forty and not suffering from a disability was removed from the Board's Programming and Culture Committee in the manner that Plaintiff was removed.

56.     Also, since joining the Congregation, Defendant Levy would act in an abusive and intimidating manner at each meeting with Plaintiff.

57.     Some examples of Levy's abusive conduct towards Plaintiff include but are not limited to:

a.  On April 27, 2014, Levy berates, yells and insults Plaintiff at a meeting attended by the committee of Emanu-El Eats, a Congregational Cookbook, which Plaintiff worked on and created, which has recently been published and distributed.

b.  On September 8, 2014, Levy began a meeting by scolding Plaintiff for allegedly sending him too many work-related emails, even though she only sent about 7 emails during a 3-month period.

c.  From mid-2014 until her termination in May 2015, Defendant Levy denied all of Plaintiff's requests for reasonable accommodation. He would frequently yell and degrade Plaintiff while communicating with her. For instance, when discussing Plaintiff's need to work from home due to her disability, which she was allowed to do prior to Levy and Glickman starting to work at the Congregation, Levy would yell at Plaintiff and deny her reasonable request for accommodation.

d.  In or about September 2014, Levy even threatened to reduce Plaintiff's job responsibilities if she worked from home and stated that her employment and welfare are in his hands and under his control.

e.  On September 23, 2014, Levy began a meeting by yelling at Plaintiff, and became very angry and hostile towards her for sending an email regarding her successfully resolving a pre-existing problem with the book group. He also mimicked her gestures and mocked her while other staff members were of hearing distance from him, and even irrationally told her that she had no right to resolve the problem.

f.  During the same meeting on September 23, 2014, Plaintiff inquired from Defendant Levy why her name was excluded from the list published for the Programming and

Culture Committee. At that moment, Levy became enraged and started yelling uncontrollably at Plaintiff.

58.     Defendant Levy's abusive, hostile and intimidating conduct towards Plaintiff was fueled with discriminatory intent against Plaintiff because of her disability, age and gender.

59.     On April 13, 2014, Plaintiff complained to Rabbi Davidson about Levy's abusive, harassing and hostile behavior towards her.

60.     Defendant Davidson refused and failed to take any remedial action to make sure that Levy no longer engaged in such unlawful actions towards Plaintiff.

61.     No other employee who was a male, under the age of forty and not suffering from a disability was treated in any manner even remotely similar to how Plaintiff was treated by Defendant Levy.

62.     In September 2014, Defendant Hoffman, management consultant for the Congregation's "Visioning Committee," addressed the Religious School Faculty meeting and stated that the Congregation will thrive and survive into a new era as a result of the "new hires" and "young people" who have been hired since Saul Kaiserman ("Kaiserman") and new Religious School staff were hired.

63.     At all relevant times herein, Kaiserman was the Director of Lifelong Learning for the Congregation.

64.     Immediately, following those discriminatory comments by Rabbi Hoffman, Plaintiff complained to Hoffman about his statements, specifically when stating that the Congregation will thrive and survive as a result of "new hires" and "young people."

65.     Plaintiff reminded Rabbi Hoffman that, despite not being a "new hire" or "young," she initiated and played a major role in planning significant lecture series for the 2012-2013 transition years, and in advancements within the Congregation over the 17 years of employment.

66.     Plaintiff also complained of the Congregation's age discriminatory atmosphere, culture and mentality.

67.     In the Fall of 2014, shortly after Defendants Levy and Glickman started working at the Congregation, Glickman allowed the tampering with Plaintiff's time sheets, falsely accused Plaintiff of falsifying her time, and threatened to take away her vacation days.

68.     However, once Plaintiff started recording the times she arrived and left the Congregation, Defendants suddenly stopped their accusations.

69.     Also in the Fall of 2014, while Defendant Hoffman was addressing congregants at a Sunday breakfast session, he reiterated that the Congregation will thrive and survive into a new era as a result of the "new hires" and "young people" who have been hired since Kaiserman and the Religious School staff were hired.

70.     In or around September 2014, Plaintiff requested a copy of the Congregation's sick leave policy in order to request a leave of absence due to her disability.

71.     However, Defendants refused to provide Plaintiff with the Congregation's policies barring her from scheduling her sick leave.

72.     During the winter of 2015, Plaintiff made several requests to work from home during inclement weather conditions because of her physical disability.

73.     However, with pure discriminatory intent, and despite granting Plaintiff's requests for accommodations before Defendants Levy and Glickman started working at the Congregation, Defendants denied Plaintiff's request compelling her use vacation days.

74.     On May 12, 2015, Plaintiff was called into a meeting and told by Defendants Levy and Glickman that her position was purportedly eliminated and was offered instead a one day clerical, non-professional position.

75.     Plaintiff was not even given a farewell gathering, after 17 years of service, and no announcement was made of her job termination as is customary at the Congregation.

76.     Defendant Glickman also falsely stated to the Executive Committee that Plaintiff was dismissed and that her work with the Religious School and Nursery School was ineffectual.

77.     That intentionally false statement is directly contradicted and rebutted by Plaintiff's performance record with the Congregation and her experience.

78.     That false and damaging statement was repeated at least three times by Trustee Brian Pessin ("Pessin") at the Congregation's annual meeting on May 27, 2015.

79.     However, in or about August 2015, the Congregation published a job posting seeking to fill the position of Librarian, which had similar professional requirements for the position that Plaintiff held prior to being terminated on May 12, 2014.

80.     Other employees who either did not suffer from a disability, who were younger than Plaintiff or who were male employees, were not treated in the same disparate manner as Plaintiff.

81.     For example, Warren Klein, a 29-year old male employee, who does not suffer from a disability, was promoted in May 2015, was offered partial responsibility to run the library.

82.     Also, Christine Manomat, who did not suffer from a disability, was allowed to work from home.

83.     Even Defendant Glickman, starting in or about September 2016 was allowed to work from home, while previously denying Plaintiff's requests for a reasonable accommodation.

84.     In fact, it is evident that Defendants nurture and cultivate a discriminatory and harassing work environment whereby they have repeatedly engaged in numerous discriminatory actions against female employees, over the age of 40, some of which suffered from a disability.

85.     Some examples of Defendants' discriminatory and harassing culture include but are not limited to:

     a.  Roberta Greenberg, a 68-year old female employee, had her salary cut by one third despite working for Defendants for 48 years.

     b.  Hadassah Mushinsky, an 87-year old female employee, had her salary cut in half and lost her benefits.

     c.  Cantor Lori Corrsin, a 60-year old female employee with a disability, was refused leave to recover from a foot surgery and was terminated instead.

     d.  Indira Tawari, a 42-year old female employee, who worked for the Congregation for 25 years, was terminated without proper notice or cause.

     e.  Norma Balass, a female employee over the age of 70, was terminated and replaced by two female employees in their 20's.

     f.  Marion Hedger, a 49-year old female, and Phyllis Treichel, a 52-year old female, were terminated after the Congregation adopted a more "youthful image."

86.     As a result of Defendants' discriminatory, retaliatory, harassing and hostile conduct, Plaintiff suffered, and continues to suffer, among other things, mental anguish, emotional distress, loss of enjoyment of life, stress, anxiety and other monetary damages connected with Defendants' aforementioned violations.

87.     Plaintiff has been consulting with a psychiatrist as a proximate result of Defendants' continuous actions.

## AS AND FOR A FIRST CAUSE OF ACTION
### Gender Discrimination in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### against the Congregation Emanu-El of the City of New York

88.     Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

89.     Defendant the Congregation violated Title VII, 42 U.S.C. §2000e, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's gender was the motivating, if not the only factor.

90.     As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

91.     Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

92.     As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### Gender Discrimination in Violation of Executive Law § 296, *et seq.*
### against All Defendants

93.     Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

94.     Defendants violated Executive Law §296, *et seq*., by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's gender was the motivating, if not the only factor.

95.     As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

96.     Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

97.     As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### Gender Discrimination in Violation of Administrative Code § 8-107, *et seq*. against All Defendants

98.     Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

99.     Defendants violated Administrative Code § 8-107, *et seq*., by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's gender was the motivating, if not the only factor.

100.     As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional

distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

101.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

102.    As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

### AS AND FOR A FOURTH CAUSE OF ACTION
**Age Discrimination in Violation to ADEA, 29 U.S.C. § 621, *et seq*.
against the Congregation Emanu-El of the City of New York**

103.    Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

104.    Defendant the Congregation violated the ADEA, 29 U.S.C. § 621, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's age was the motivating, if not the only factor.

105.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

106.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

107.    As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Age Discrimination in Violation of Executive Law, § 296, *et seq*.
### against All Defendants

108.    Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

109.    Defendants violated the Executive Law § 296, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's age was the motivating, if not the only factor.

110.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

111.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

112.    As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Age Discrimination in Violation of Administrative Code, § 8-107, *et seq*.
### against All Defendants

113.    Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

18

114.    Defendants violated the Administrative Code § 8-107, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's age was the motivating, if not the only factor.

115.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

116.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

117.    As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

**AS AND FOR SEVENTH CAUSE OF ACTION**
**Disability Discrimination in Violation of ADA, 42 U.S.C. § 12101, *et seq.*,**
**against the Congregation Emanu-El of the City of New York**

118.    Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

119.    Defendant the Congregation violated the ADA, 42 U.S.C. § 12101, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's disability was the motivating, if not the only factor.

120.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional

distress, loss of enjoyment of life, and other monetary damages connected with Defendants'
aforementioned violations.

121.   Plaintiff continues to suffer and to incur additional damages by reason of the
foregoing.

122.   As a result of the outrageous and blatantly discriminatory conduct of Defendants,
with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive
damages.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
**Disability Discrimination in Violation of Executive Law § 296, *et seq*.
against All Defendants**

123.   Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set
forth herein.

124.   Defendants violated the Executive Law § 296, *et seq.*, by engaging in, perpetuating
and permitting supervisory and decision making employees to engage in discriminatory
employment practices in which Plaintiff's disability was the motivating, if not the only factor.

125.   As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and
continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional
distress, loss of enjoyment of life, and other monetary damages connected with Defendants'
aforementioned violations.

126.   Plaintiff continues to suffer and to incur additional damages by reason of the
foregoing.

127.   As a result of the outrageous and blatantly discriminatory conduct of Defendants,
with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive
damages.

## AS AND FOR A NINTH CAUSE OF ACTION
### Disability Discrimination in Violation of Administrative Code § 8-107, *et seq*.
### against All Defendants

128.   Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

129.   Defendants violated the Administrative Code § 8-107, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's disability was the motivating, if not the only factor.

130.   As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

131.   Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

132.   As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## AS AND FOR A TENTH CAUSE OF ACTION
### Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.
### against the Congregation Emanu-El of the City of New York

133.   Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

134.   Defendant the Congregation violated Title VII, 42 U.S.C. §2000e, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision making employees to engage

21

in retaliatory actions against Plaintiff for engaging in protected activities, when complaining of the discriminatory, harassing and disparate treatment she was subjected to by Defendants.

135.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

136.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

137.    As a result of the outrageous and blatantly discriminatory and retaliatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### Retaliation in Violation of Executive Law § 296, *et seq*. against All Defendants

138.    Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

139.    Defendants violated Executive Law §296, *et seq*., by engaging in, perpetuating and permitting supervisory and decision making employees to engage in retaliatory actions against Plaintiff for engaging in protected activities, when complaining of the discriminatory, harassing and disparate treatment she was subjected to by Defendants.

140.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

141.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

142.    As a result of the outrageous and blatantly discriminatory and retaliatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

### AS AND FOR A TWELFTH CAUSE OF ACTION
**Retaliation in Violation of Administrative Code § 8-107, *et seq*. against All Defendants**

143.    Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

144.    Defendants violated Administrative Code § 8-107, *et seq*., by engaging in, perpetuating and permitting supervisory and decision making employees to engage in retaliatory actions against Plaintiff for engaging in protected activities, when complaining of the discriminatory, harassing and disparate treatment she was subjected to by Defendants.

145.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

146.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

147.    As a result of the outrageous and blatantly discriminatory and retaliatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
### Retaliation in Violation of the ADEA, 29 U.S.C. § 621, *et seq*.
### against the Congregation Emanu-El of the City of New York

148.    Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

149.    Defendant the Congregation violated the ADEA, 29 U.S.C. § 621, *et seq*., by engaging in, perpetuating and permitting supervisory and decision making employees to engage in retaliatory actions against Plaintiff for engaging in protected activities, when complaining of the discriminatory, harassing and disparate treatment she was subjected to by Defendants.

150.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

151.    Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

152.    As a result of the outrageous and blatantly discriminatory and retaliatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
### Failure to Accommodate in Violation of the ADA, 42 U.S.C. § 12101, *et seq*.,
### against the Congregation Emanu-El of the City of New York

153.    Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

154.    Defendant the Congregation is aware of Plaintiff's disability and of her numerous requests for a reasonable accommodation.

155.    However, Plaintiff's requests for a reasonable accommodation have been ignored and/or denied.

156.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer severe emotional distress, and other monetary damages, including but not limited to back-pay and front-pay, connected with Defendants' violations of the ADA and their denial to reasonably accommodate Plaintiff.

157.    As a result of Defendants' unlawful acts, Plaintiff has been deprived of back-pay and front-pay in amounts to be determined at trial, and is entitled to recover such amounts, liquidated damages, pre- and post-judgment interests, attorneys' fees, costs, and other compensation pursuant to the ADA.

158.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.

159.    As a result of the outrageous and blatantly unlawful conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

### AS AND FOR A FIFTEENTH CAUSE OF ACTION
**Failure to Accommodate in Violation of the Executive Law § 296, *et seq*.**
**against All Defendants**

160.    Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

161.    Defendants are aware of Plaintiff's disability and of her numerous request for a reasonable accommodation.

162.    However, Plaintiff's requests for a reasonable accommodation have been ignored and/or denied.

163.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer severe emotional distress, and other monetary damages, including but not limited to back-pay and front-pay, connected with Defendants' violations of the Executive Law § 296, *et seq*.

164.    As a result of Defendants' unlawful acts, Plaintiff has been deprived of back-pay and front-pay in amounts to be determined at trial, and is entitled to recover such amounts, liquidated damages, pre- and post-judgment interests, attorneys' fees, costs, and other compensation pursuant to the Executive Law § 296, *et seq*.

165.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.

166.    As a result of the outrageous and blatantly unlawful conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION
**Failure to Accommodate in Violation of the Administrative Code § 8-101, *et seq*.
against All Defendants**

167.    Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

168.    Defendants are aware of Plaintiff's disability and of her numerous request for a reasonable accommodation.

169.    However, Plaintiff's requests for a reasonable accommodation have been ignored and/or denied.

170.    As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer severe emotional distress, and other monetary damages, including but not

limited to back-pay and front-pay, connected with Defendants' violations of the Administrative Code § 8-101, *et seq.*

171.    As a result of Defendants' unlawful acts, Plaintiff has been deprived of back-pay and front-pay in amounts to be determined at trial, and is entitled to recover such amounts, liquidated damages, pre- and post-judgment interests, attorneys' fees, costs, and other compensation pursuant to the Administrative Code § 8-101, *et seq*.

172.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.

173.    As a result of the outrageous and blatantly unlawful conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

### AS AND FOR A SEVENTEENTH CAUSE OF ACTION
### Hostile Work Environment against All Defendants

174.    Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

175.    The workplace is permeated with discriminatory intimidation, actions, and ridicule based on Plaintiff's gender, age and disability, as well as with retaliatory conduct, all of which were sufficiently severe that they altered the conditions of Plaintiff's employment and created an abusive working environment.

176.    As a result of Defendants' aforementioned unlawful conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

177.    As a result of the outrageous and blatantly unlawful conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Elizabeth Stabler prays that this Court:

A.      award Plaintiff equitable relief of back pay, salary and fringe benefits in an exact amount to be determined at trial;

B.      award Plaintiff full compensation damages under the ADEA, 29 U.S.C. § 621 *et seq*., the ADA, 42 U.S.S. § 12101, *et seq*., Title VII, 42 U.S.C. §§2000e *et seq*., the Executive Law, § 296, *et seq.*, and the Administrative Code, § 8-101, *et seq*., in an exact amount to be determined at trial;

C.      award full liquidated and punitive damages as allowed under the ADEA, 29 U.S.C. § 621 *et seq*., the ADA, 42 U.S.S. § 12101, *et seq*., Title VII, 42 U.S.C. §§2000e *et seq*., the Executive Law, § 296, *et seq.*, and the Administrative Code, § 8-101, *et seq*., in an exact amount to be determined at trial;

D.      award pre-judgment and post-judgment interests;

E.      issue a declaratory judgment declaring that the acts and practices complained of herein are in violation of the ADEA, the ADA, Title VII, the Executive Law, and the Administrative Code;

F.      award Plaintiff an amount to be determined at trial for lost compensation, back-pay, bonuses, raises, benefits, emotional distress damages, and additional amounts such as liquidated damages;

G.      award Plaintiff such compensatory, prospective, exemplary and punitive damages

as this Court deems appropriate, just and proper;

H.      award Plaintiff the cost of prosecuting this action and for reasonable attorneys' fees

under the aforementioned statutes and 42 U.S.C. § 1988; and

I.      such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        December 13, 2016

                        Respectfully Submitted,

                        THE LAW OFFICE OF RUDY A. DERMESROPIAN, LLC


                        By:  ____s/ Rudy A. Dermesropian_____
                              Rudy A. Dermesropian (RD 8117)
                              45 Broadway, Suite 1420
                              New York, NY 10006
                              Telephone: (646) 586-9030
                              Fax: (646) 586-9005

                        *Attorneys for Plaintiff Elizabeth Stabler*